```
         IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEBRASKA
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:06CV349 |
| | ) | |
| v. | ) | |
| | ) | |
| KATHLEEN M. CRANMORE, RAYMOND J. CRANMORE, and COMMUNITY FIRST NATIONAL BANK, | ) ) ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendants. | ) | |

Pending before me is the government's motion for summary judgment.[1]  Filing 35.  The defendants were given until June 18, 2007 to respond to any summary judgement motion filed by the government, and to file any counter-motion for summary judgment.  Filing 33.  The defendants have neither responded to the government's motion, nor filed their own motion, and the deadline for doing so has passed.  Therefore, the government's motion for summary judgment is deemed submitted.

For the reasons discussed below, I conclude the government is entitled to summary judgment.

STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  The ultimate burden of proof is on the movant to establish that there are no material facts in dispute and

---

[1] See filing 34, "Consent to Exercise of Jurisdiction by a United States Magistrate Judge," and 28 U.S.C. § 636(c).

that, as a matter of law, the movant is entitled to judgment. Fed. R. Civ. P. 56(c); Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences without assessing credibility. Breeding v. Arthur J. Gallagher and Co., 164 F.3d 1151, 1156 (8th Cir. 1999).

STATEMENT OF FACTS

The government's amended complaint alleges defendants Kathleen and Raymond Cranmore defaulted on loans received from the United States, acting through the Farm Service Agency ("FSA").[2] The government alleges the Cranmores' indebtedness was secured by mortgages on six parcels of real estate located in Morrill County, Nebraska, and by security interests in machinery, equipment and vehicles. Finally, it is undisputed that Raymond Cranmore filed for Chapter 11 bankruptcy protection, but Kathleen Cranmore did not. The government's lawsuit seeks foreclosure on Kathleen Cranmore's undivided one-half interest in the mortgaged real estate and chattel security.[3] See filing 3 (Amended Complaint).

---

[2]The FSA was previously known as the Farmers Home Administration.

[3]Defendants Farm Credit Services of America, PCA has been dismissed as a party defendant. Filing 28. Named defendant, Community First National Bank, has disclaimed any interest in the property at issue in this lawsuit. Filing 5.

The Cranmores admit they received loans from the government, and that those loans were secured by mortgages on the six parcels of Morrill County, Nebraska real estate described in paragraph 3 of the Amended Complaint. They further admit that the government has accelerated the loans and demanded payment in full. See filing 12 (Answer), ¶¶ 1, 2 & 5. The Cranmores have raised estoppel and laches defenses to the government's claim.

In addition to those facts admitted by the defendants in their answer, the government has submitted the following undisputed evidence in support of its motion for summary judgment:

The Cranmores received from the FSA, and later restructured, the following unpaid Operating, Emergency, and Economic Emergency loans secured by liens on machinery, equipment and vehicles.

    --  May 23,1978:
        Loaned amount:           $9,000.00;
        Restructured amount:     $6,360.77.
        (See filing 3 (Amended Complaint), exs. D & M).

    --  April 3, 1979:
        Loaned amount:           $52,100.00;
        Restructured amount:     $10,133.66.
        (See filing 3 (Amended Complaint), exs. E & N).

    --  On March 29,1982:
        Loaned amount:           $30,000.00;
        Restructure amount:      $28,974.37.
        (See filing 3 (Amended Complaint), exs. G & P).

    --  February 28, 1983:
        Loaned amount:           $46,000.00;
        Restructured amount:     $58,142.74.
        (See filing 3 (Amended Complaint), exs. H & Q).

    --  February 28, 1983:
        Loaned amount:           $125,100.00;
        Restructured amount:     $44,472.79.
        (See filing 3 (Amended Complaint), exs. I & R).

```
--      April 16, 1984:
        Loaned amount:           $82,700.00;
        Restructured amount:     $34,201.22.
        (See filing 3 (Amended Complaint), exs. J & S).
```

The Cranmores received from the FSA, and later restructured, the following Farm Ownership loans secured by real estate in Morrill County, Nebraska:

```
--      June 20, 1977:
        Loaned amount:           $32,250.00;
        Restructured on September 26, 1985 to $35,536.32.
        (See filing 3 (Amended Complaint), exs. C & L).

--      June 20, 1977:
        Loaned amount:           $47,260.31;[4]
        Restructured on September 26, 1985 to $53,499.68.
        (See filing 3 (Amended Complaint), exs. A & K).

--      November 30, 1979:
        Loaned Amount:           $65,000.00;
        Restructured on November 30, 1979 to $70,963.44.
        (See filing 3 (Amended Complaint), exs. F & O).
```

The June 20, 1997 loans were secured by the following parcel of real estate:

> The SE 1/4, and 1.674 acres along part of the south side of NE 1/4, Section 20, Township 18 North, Range 48 West of the 6th Principal Meridian, Morrill County, Nebraska, all more particularly described as follows:
>
> Beginning at the Southeast corner of said Section 20;
>
> Thence North on the east line of said Section 20, for a distance of 2661.9 feet, to a point 7.0 feet north of the northeast corner of said SE 1/4;

---

[4] This loan is was assumed from Theodore Cranmore and Donna Cranmore. The original loan was in the amount of $50,000. Filing 32, exhibit A.

4

> Thence N. 89° 48' West, along the south side of driveway, for a distance of 1622.1 feet;
>
> Thence S. 2° 29' E., (between houses), for a distance of 83.0 feet, to a point on the north line of said SE 1/4;
>
> Thence S. 87° 31' W., on said north line SE 1/4, for a distance of 995.7 feet, to the northwest corner of said SE 1/4;
>
> Thence S. 0° 58' E., on the west line of said SE 1/4, for a distance of 2648.3 feet, to the southwest corner of said SE 1/4;
>
> Thence N. 87° 38' E., on the south line SE 1/4, for a distance of 2571.0 feet, to the point of beginning, comprising a total area of 159.456 acres more or less, subject to county roads on 33.0 feet width along the east line and along the south line.

Filing 3 (Amended Complaint), exs. T, U & V. In addition, the June 20, 1977 loan in the amount of $32,500 was secured by a security agreement identifying a Lindsay Zimmatic Sprinkler as collateral. Filing 3 (Amended Complaint), ex. X.

The November 30, 1979 real estate loan was secured by the following five parcels of real estate:

> The South Half of the Southwest Quarter (S 1/2 SW 1/4) of Section 28, Township 18 North, Range 48 West of the 6th PM, Morrill County, Nebraska.
>
> The West Half (W 1/2) and the South Half of the Southeast Quarter (S 1/2 SE 1/4) of Section 29, Township 18 North, Range 48 West of the 6th PM, Morrill County, Nebraska.
>
> All of Section 31, Township 18 North, Range 48 West of the 6th PM, Morrill County, Nebraska.
>
> The East Half of the Northeast Quarter (E 1/2 NE 1/4) of Section 32, Township 18 North, Range 48 West of the 6th PM, Morrill County, Nebraska.

>The West Half of the Northwest Quarter (W 1/2 NW 1/4) of Section 33, Township 18 North, Range 48 West of the 6th PM, Morrill County, Nebraska.

Filing 3 (Amended Complaint), ex. W.

In addition to the real estate mortgages identified above, the Cranmores pledged their crops, machinery, vehicles, and livestock as security for their debts to the United States. Filing 3 (Amended Complaint), exs. Y through DD.

The promissory notes at issue in this litigation provide:

>DEFAULT:  Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of such indebtedness immediately due and payable.

Filing 3 (Amended Complaint), exs. A , B, & D through S.

The mortgages held by the government state:

>SHOULD DEFAULT occur in the performance or discharge of any obligation secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, a bankrupt, or an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence

> and without notice of hearing of said application, have
> a receiver appointed for the property, with the usual
> powers of receivers in like cases, (d) foreclose this
> instrument as provided herein or by law, and (e)
> enforce any and all other rights and remedies provided
> herein or by present or future law.

Filing 3 (Amended Complaint), exs. T, U & V. In addition, the security agreements state that if the Cranmores fail to pay promptly an indebtedness secured by the pledged collateral, the government may at its option, with or without notice: (a) "declare the unpaid balance on the note and any indebtedness secured hereby immediately due and payable," (b) take possession of the pledged collateral, and (c) exercise any sale of the collateral or rights accorded by law. Filing 3 (Amended Complaint), exs. Y through CC.

    Raymond J. Cranmore filed a Chapter 11 bankruptcy proceeding on April 10, 1986. The bankruptcy estate included his undivided one-half interest in the machinery, equipment, titled vehicles and real estate pledged as security for his FSA loans. As part of that bankruptcy, the FSA was ordered to accept $112,472.37 as payment of Raymond J. Cranmore's FSA debt. Since Raymond J. Cranmore's bankruptcy estate did not include Kathleen M. Cranmore's one-half interest in the secured property, FSA received only one-half the value of the secured property as a claim under Raymond J. Cranmore's confirmed Chapter 11 Plan.

    Although Kathleen M. Cranmore filed a Chapter 11 bankruptcy petition on January 24, 1989, that petition was dismissed and no plan of reorganization was ever confirmed. Kathleen M. Cranmore has failed to pay installments of principal and interest on the FSA loans when due, and owes the FSA $263,325,13 in principal and $359,025,69 of interest as of February 8, 2007, plus interest

thereafter at the daily rate of $54.7873. The FSA presented several proposals to Kathleen M. Cranmore in an attempt to resolve this matter without litigation. These efforts were unavailing. The FSA has therefore filed this action to foreclose on Kathleen M. Cranmore's undivided one-half interest in the machinery, equipment, titled vehicles and real estate pledged as security on the FSA loans.

## LEGAL ANALYSIS

When the FSA acts as a lender, it acts in a commercial rather than a sovereign capacity. Government security interests obtained through FSA lending programs are controlled by the commercial law of each state. Arcoren v. Peters, 829 F.2d 671, 674-75 (8th Cir. 1987)(citing United States v. Kimbell Foods, Inc., 440 U.S. 715 (1979). The Cranmores are Nebraska citizens and the real and personal property pledged as security for their FSA notes is located in Nebraska. The court therefore looks to Nebraska law in determining this foreclosure action.

> When foreclosing a mortgage, Nebraska law, which [is] the rule of decision here, requires the government to prove "the existence of the mortgage lien, the amount and priority thereof, default, and the right to a decree directing sale of the premises and satisfaction thereof." West Town Homeowners Assoc. v. Schneider, 231 Neb. 100, 103, 435 N.W.2d 645, 648 (1989). See also Neb. Rev. Stat. §§ 25-2137, et seq. (Michie 1995)(foreclosure of mortgages). Similar proof is required for the enforcement of security interests. See, e.g., Mid-America Dairymen, Inc. v. Newman Grove Co-op. Creamery Co., Inc., 191 Neb. 74, 78, 214 N.W.2d 18, 22 (1974). See also Neb. U.C.C. § 9-203 (Michie 1998 Supp.)(attachment and enforceability of security interest); Neb. Rev. Stat. §§ 25-1093, et seq. (Michie 1995)(replevin).

U.S. v. Hughes Ranch, Inc., 33 F. Supp. 2d 1157, 1170 (D. Neb. 1999)(Kopf, J.). The undisputed facts prove: 1) Raymond and Kathleen Cranmore signed the promissory notes at issue in exchange for receiving FSA loans; 2) the Cranmores granted the government mortgages and security interests in machinery, equipment and vehicle as collateral for the FSA loans; (3) no other mortgages and security interests have priority over the government's claim to this pledged property; (4) Kathleen Cranmore has defaulted on her obligation to pay the loans; and (5) the government has accelerated the indebtedness and has demanded payment in full. Accordingly, absent some viable defense to the government's claim, the government is entitled to a decree of foreclosure on the Kathleen Cranmore's undivided one-half interest in the mortgaged real estate and the personal property pledged as security for the FSA loans. See U.S. v. Tieken, 2002 WL 818233, *3 (D. Neb. 2002)(Smith Camp, J.)(holding the FmHA was entitled to summary judgment based on undisputed evidence that the debtor signed promissory notes, received loans, and defaulted on his repayment obligations, and the lack of any evidence to support legal or equitable defenses to the government's claim); Hughes Ranch, 33 F. Supp. 2d at 1170 (granting summary judgment in favor of the FmHA to foreclose on real estate mortgages and security interests).

The Cranmore defendants alleged estoppel and laches defenses. However, having failed to produce any evidence or submit any arguments in support of these affirmative defenses, Kathleen Cranmore has failed to present any valid defense to the government's foreclosure action. The government's motion for summary judgment will be granted.

IT THEREFORE HEREBY IS ORDERED:

1.  The motion for summary judgment filed by the United States of America, filing 35, is granted, and the United States is entitled to entry of a judgment for foreclosure of mortgages and enforcement of security interests against the Kathleen M. Cranmore's undivided one-half interest in the mortgaged real estate and chattel security.

2.  After consulting with opposing counsel and securing their approval as to form, counsel for the government shall, within 30 days, submit to me by electronic mail a proposed judgment (including decree of foreclosure and order of enforcement, such as replevin) in accordance with this opinion.


DATED this 6th day of July, 2007.

                                        BY THE COURT:

                                        s/ *David L. Piester*
                                        David L. Piester
                                        United States Magistrate Judge